UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS DROZ,

                    Plaintiff,           6:09-CV-920

          v.

PETER A. KARL, III, ESQ.; PARAVATI,
KARL, GREEN & DeBELLA; PATRICK J.
HART, CPA; and MOORE & HART, CPA,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

LEONARD & CUMMINGS, LLP        HUGH B. LEONARD, ESQ.
Attorneys for Plaintiff
84 Court Street, Suite 402
Binghamton, New York 13901

SUGARMAN LAW FIRM, LLP         MATTHEW D. GUMAER, ESQ.
Attorneys for Defendants Karl and
Paravati, Karl, Green & DeBella
211 West Jefferson Street
Syracuse, New York 13202

SMITH, SOVIK, KENDRICK & SUGNET, P.C.   KEVIN E. HULSLANDER, ESQ.
Attorneys for Defendants Hart and
Moore & Hart, CPA
250 South Clinton Street, Suite 600
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

## I. <u>INTRODUCTION</u>

      Plaintiff Thomas Droz ("plaintiff" or "Droz") brought a legal malpractice action

against defendants Peter A. Karl, III, Esq. ("Karl"); Paravati, Karl, Green & DeBella (the

"Firm") (collectively "defendants"); Patrick J. Hart, CPA; and Moore & Hart, CPA ("co-defendants").  Plaintiff specifically alleges defendants Karl and the Firm were negligent in representing him, in drafting the Good News Foundation Trust (the "Trust") for settlor, Leroy A. Scheidelman ("Scheidelman"), that defendants should have prepared the Trust as a charitable trust, and that defendants negligently advised plaintiff how to calculate distributions and Trustee commissions.  Defendants filed an answer and amended answer to plaintiff's complaint with a cross-claim against the co-defendants.  The co-defendants also filed an answer to the complaint with a cross-claim against the defendants.

Defendants Karl and the Firm moved for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure to dismiss the complaint.  Plaintiff opposed and cross-moved to dismiss defendants' affirmative defenses.  The co-defendants did not respond nor have they filed a motion.  Both motions were considered on their submissions without oral argument.

## II. __BACKGROUND__

The following facts are undisputed unless otherwise noted.  In June1992 Scheidelman, with the help of Karl, created the Good News Foundation (the "Foundation"), an organization devoted to encouraging others to enter into the Roman Catholic Church. Scheidelman initially funded the charity with a direct gift.  In 1994, he approached Karl with respect to making a further donation to the Foundation.  After lengthy discussions, Karl drafted the Trust at issue to carry out Scheidelman's funding objectives.  Pursuant to his wishes, Scheidelman's grandson, Droz, was appointed Trustee.  Based on Karl's recommendations, Scheidelman adopted the formula for Trustee commissions pursuant to

the Surrogate's Court Procedure Act § 2309(2) (statutory schedule for Trusts with a Private Beneficiary).

The extent of Droz's involvement in negotiating the terms of the Trust, and the scope of discussions between him and Karl regarding the formation of the Trust and his subsequent duties as Trustee, are disputed by the parties.  Plaintiff maintains in addition to discussions between Karl, himself, and Scheidelman, he and Karl had private telephone conversations regarding the Trust and proposed commission rates.  Plaintiff contends during this time, he considered Karl and the Firm to be his attorneys.  Droz Aff. ¶ 18, Dkt. No. 24-3.  According to plaintiff, after the Trust was established, and based upon his understanding that Karl was still his attorney, plaintiff requested Karl prepare an actual calculation showing the Trustee commissions at the agreed rate.  Id. at  ¶ 24.  Plaintiff continued to regularly contact Karl regarding the Trust, Trust filings, payment of funds to the Foundation, and Trustee commissions.  Id. at ¶ 25.

In December 2007 a dispute arose between the Foundation and Droz, based in part, on the calculation of Trustee commissions and distributions to the Foundation.  The issues relating to whether commissions should be calculated pursuant to the Surrogate's Court Procedure Act  § 2309(3) or § 2309(5), and whether the Trust provided for a sufficient annual distribution to the Foundation to qualify for favorable tax treatment, first came to light in 2007, thirteen years after the drafting and execution of the Trust in 1994.  The Foundation ultimately commenced an action in March 2008 in the Oneida County Surrogate's Court against plaintiff.  The petition sought, in part, to compel him to provide an accounting, to surcharge him, and to remove him as a fiduciary.

The Foundation alleged numerous acts of misconduct on the part of Droz, including the failure to distribute annual income to the Foundation as required by the Trust, the failure to prepare annual accountings, gross misconduct regarding tax compliance, and improper investment strategy and self-dealing, among other allegations of misfeasance.  The Foundation alleged his "gross negligence, purposeful wrongdoing and flagrant refusal to carry out the terms of the Trust and to make petitioner whole mandate the removal of [Droz]." Defs.'  Statement of Material Facts, Ex. D ¶ 40, Dkt. No. 23-5.

The underlying Surrogate Court's action was resolved by Decision and Order and Settlement Stipulation dated December 24, 2008.  As part of the Settlement Agreement, Droz resigned as Trustee and paid the Trust $300,000.  The Settlement Agreement did not identify a specific basis for his resignation.  In August 2009 plaintiff commenced this legal malpractice action against defendants.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial.  FED. R. CIV. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### B.  Existence of Attorney-Client Relationship

Defendants first argue there was no attorney-client relationship between Droz and Karl in forming the Trust because Karl prepared the Trust on behalf of his client, Scheidelman, the Trust's settlor.  Plaintiff contends Karl and the Firm were acting as his attorneys when negotiating the terms of the Trust, or that alternatively, there was reliance by him and/or special circumstances such that a finding of privity between himself and Karl is warranted in the absence of a direct attorney-client relationship.  Plaintiff argues he was a third-party beneficiary of the trust document because it was expected that as Trustee, he would rely upon Karl's legal advice.

### 1.  Direct Attorney-Client Relationship

In order to sustain a legal malpractice claim, a plaintiff must show: (1) the existence of an attorney-client relationship, (2) negligence, (3) which is the proximate cause of a loss, and (4) actual damages.  See Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citing Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 170 A.D.2d 108, 114 (N.Y. App. Div. 1st Dep't 1991), aff'd, 80 N.Y.2d 377 (1992)); see also

Moran v. Hurst, 32 A.D.3d 909, 910 (N.Y. App. Div. 2d Dep't 2006) ("To recover damages for legal malpractice, a plaintiff must prove, inter alia, the existence of an attorney-client relationship.").  While the payment of a fee or existence of a formal retainer agreement may be indicators of an attorney-client relationship, such factors are not dispositive.  See Moran, 32 A.D.3d at 911.  An attorney-client relationship may instead arise by words and actions of the parties; however, one party's unilateral belief, standing alone, does not confer upon him or her the status of a client.  Id.

The parties do not dispute that defendants represented Droz on various personal and business matters, unrelated to the formation of the Trust, since the mid-1980s until April, 2008.  Droz Aff. ¶¶ 2-3.  Those transactions are not at issue.  Nor do the parties dispute there were periodic contacts between plaintiff and Karl with respect to, among other issues, Trust distributions and Trustee commissions.  Defendants maintain Karl represented Scheidelman, alone, in the creation of the Trust, and in communications between plaintiff and Karl regarding the Trust, Karl was acting on behalf of Scheidelman as settlor.

Other than several communications between Droz and Karl and/or the Firm from 1995 to 2008, plaintiff has adduced no evidence to support his contention that defendants represented him, such as a fee arrangement or fee payment, a written retainer agreement, a writing that promotes Droz's interests as Trustee instead of the interests of the Trust, or even an oral conversation in which defendants undertook representation.  Droz Aff. ¶ 33.  Instead, the evidence demonstrates an attorney-client relationship between Karl and Scheidelman for purposes of the Trust.  Plaintiff's own prior sworn affidavit in the underlying Surrogate Court's action consistently refers to Karl as his "grandfather's attorney," "grandfather's counsel," and makes other references demonstrating his understanding that Karl was acting as

Scheidelman's counsel with respect to the Trust.  Gumaer Aff., Ex. G ¶¶ 4, 5, 8, 10, 32, 35, Dkt. No. 23-8.

While the correspondence Droz has presented might otherwise raise a triable issue of fact, these assertions are insufficient in light of his own prior sworn affidavit.  "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)).  A party does not show a triable issue of fact merely by submitting an affidavit that disputes his own prior sworn testimony.  See, e.g., Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991).  However, a material issue of fact may be exposed by the party's subsequent sworn testimony that adds to, or explains, but does not merely contradict, his prior testimony.  See Villante v. Dep't of Corr. of N.Y.C., 786 F.2d 516, 522 (2d Cir. 1986).  Plaintiff has not presented any testimony which adds to, or explains his prior affidavit demonstrating his understanding that Karl represented Scheidelman.

**2.  Privity Based on Special Circumstances**

Generally, the malpractice liability of an attorney does not extend to third persons with whom there is no attorney-client relationship.  In the absence of "fraud, collusion, malicious acts, or other special circumstances, an attorney is not liable to third parties, not in privity, for harm caused by professional negligence."  Rovello v. Klein, 304 A.D.2d 638, 638 (N.Y. App. Div. 2d Dep't 2003); see also Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057,1080 (2d. Cir. 1977).  Even without actual privity, a relationship so close as to approach

that of privity may suffice.  Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992).

Droz's argument that he can maintain the malpractice action in the absence of a direct attorney-client relationship because he relied on Karl's advice also fails.  No facts exist such that standing should be extended based on the presence of fraud, collusion, malicious acts, or a relationship so close as to approach privity.  Plaintiff's reliance on Prudential is misplaced.  In Prudential, the defendant law firm prepared an opinion letter on behalf of its client (debtor United States Lines), for the sole purpose of reassuring plaintiff of debtor's financial obligations.  Prudential, 80 N.Y.2d at 380.  Prudential relied on the opinion letter in agreeing to certain debt restructuring with United States Lines.  The court found that the relationship between the law firm and Prudential was sufficiently close as to approach that of privity, because the firm was well aware of both Prudential's purpose in obtaining the letter and their ultimate reliance on the information contained in the letter.  Id. at 385.  In the case at issue, while plaintiff may have relied on the advice given by Karl, Scheidelman was the one who elicited Karl's advice for the purpose of drafting the Trust.

In contrast, in Security Pac. Bus. Credit v. Peat Marwick Main & Co., the relationship between plaintiff and the defendant accounting firm did not sufficiently approach privity such that a malpractice action could be maintained.  Security Pac. Bus. Credit, 79 N.Y.2d 695, 708 (1992).  The evidence did not demonstrate the accounting firm's report was prepared for the specific purpose of inducing the plaintiff's reliance, nor did the accounting firm shape its opinion to meet any of the plaintiff's needs.  Prudential, 80 N.Y.2d at 384-85 (citing Security Pac. Bus. Credit, 79 N.Y.2d at 706-07).

The instant case is analogous to Security Pac. Bus. Credit.  Karl drafted the Trust

pursuant to Scheidelman's wishes, shaping the Trust provisions, including those regarding

distributions and commissions, to meet Scheidelman's funding objectives and needs.  Droz

contends he expressed to Karl his concerns that he would not be able to manage his current

business and manage the Trust as envisioned by Scheidelman.  Even assuming those facts

to be true, the Trust was drafted and funded in accordance with Scheidelman's wishes, and

as settlor, he had control over all the material terms of the Trust.  The Trust was created to

effectuate the charitable intent of Scheidelman, not to provide a stream of income to plaintiff

as Trustee.  The fact that the Trust did benefit plaintiff as Trustee was incidental, and does

not rise to the level of purpose and reliance required by Prudential.

Because there was no attorney-client relationship between Karl and Droz with

regard to the formation of the Trust, and no circumstances excusing such requirement,

plaintiff does not have standing to maintain a legal malpractice action against defendants.

### C.  Statute of Limitations

Defendants alternatively argue that, even assuming for purposes of their summary

judgment motion that an attorney-client relationship existed between Droz and Karl, plaintiff's

suit is time-barred by the three-year statute of limitations for claims of legal malpractice in

New York.  Plaintiff opposed defendants' motion on this ground and cross-moved for

summary judgment with regard to the application of the continuous representation doctrine to

toll the statute of limitations.

Under New York State law, the statute of limitations for a legal malpractice action is

three years.  N.Y. C.P.L.R. 214(6).  Generally, the action accrues "when all the facts

necessary to the cause of action have occurred and an injured party can obtain relief in court." McCoy v. Feinman, 99 N.Y.2d 295, 301 (2002) (citing Ackerman v. Price Waterhouse, 84 N.Y.2d 535, 541 (1994)).  In most cases, the accrual date is the day an actionable injury occurs, even if the aggrieved party is ignorant of the wrong or injury at that time.  McCoy, 99 N.Y.2d at 301.  "What is important is when the malpractice was committed, not when the client discovered it."  Shumsky v. Eisenstein, 96 N.Y.2d 164, 166 (2001) (citing Glamm v. Allen, 57 N.Y.2d 87, 95 (1982)).

Under the theory of continuous representation, the statute of limitations is tolled until an attorney ceases representing his or her client in the specific matter at issue. Shumsky, 96 N.Y.2d at 167-68 ("Application of the continuous representation or treatment doctrine is . . . limited to the course of representation concerning a specific legal matter."). Continuous representation must be more than merely a continuing relationship between attorney and client.  See id. at 168.  For the continuous representation doctrine to apply, a "mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" is required.  McCoy, 99 N.Y.2d at 306.

The parties do not dispute the drafting of the Trust occurred in 1994.  The claim accrued when the Trust was drafted, because that was the moment the actionable injury occurred (the allegedly negligent drafting of the Trust).  The parties agree the problems relating to the Trust first came to light in 2007.  However, the claim still accrued in 1994, despite the parties' ignorance of the injury until 2007.

On these facts, the three-year statute of limitations began to run on the date of the alleged malpractice in 1994, and Droz would have had until 1997 to bring an action.  The

continuous representation doctrine does not apply to toll the statute of limitations because the sporadic communications between plaintiff and Karl relating to the Trust, over a thirteen year period, do not rise to the level required by the continuous representation doctrine.  <u>See</u> Droz Aff. ¶ 33.  Further, the "mutual understanding" requirement articulated in <u>McCoy</u> has not been met.  Defendants contend after the Trust's execution in 1994, there was no mutual understanding that further representation with respect to the Trust would be required, and that neither plaintiff nor Karl appreciated that there might be any issue with the manner in which the Trust was drafted until 2007, when the Foundation began investigating the basis for its Surrogate Court's action.

The continuous representation doctrine is inapplicable, and thus the ordinary three-year statute of limitations applies.  As there are no issues of material fact as to the accrual date of the action, the plaintiff's legal malpractice claim is also barred by the statute of limitations.

### D.  <u>Defendants' Additional Grounds for Summary Judgment</u>

In addition to the above grounds, defendants moved for summary judgment based on the speculative nature of plaintiff's claim for future loss of commissions, the lack of but-for causation between the alleged legal malpractice and plaintiff's past damages, and immunity under the Volunteer Protection Act of 1997.  <u>See</u> 42 U.S.C. § 14501.  Plaintiff opposed these grounds and cross-moved for dismissal of defendants' affirmative defense based on the Volunteer Protection Act.

Based on the non-existence of an attorney-client relationship between Droz and Karl, and the three-year statute of limitations applicable to a professional legal malpractice

claim, defendants' motion for summary judgment on these grounds is warranted and disposes of plaintiff's claim against those defendants in its entirety.  Therefore, defendants' third, fourth, and fifth grounds for summary judgment and plaintiff's cross-motion need not be considered.

## IV.  CONCLUSION

Summary judgment dismissing Droz's claim against defendants Karl and Paravati, Karl, Green & DeBella for legal malpractice will be granted because there are no issues of fact which, if true, would prove that an attorney-client relationship existed between plaintiff and defendants in forming the Trust.  Even assuming for purposes of this motion that an attorney-client relationship did exist between plaintiff and defendants, the three-year statute of limitations bars plaintiff's legal malpractice claim, and the continuous representation doctrine would not operate to toll the statute of limitations.  As a result, plaintiff's cross-motion is moot.

Therefore, it is

ORDERED that

1.  Defendants Karl and Paravati, Karl, Green & DeBella's motion for summary judgment is GRANTED;

2.  Plaintiff's cross-motion to dismiss defendants' affirmative defenses is DENIED; and

3.  The complaint against defendants Karl and Paravati, Karl, Green & DeBella is DISMISSED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 8, 2010
        Utica, New York.